**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
DOUGLAS A. DOVALE,

                           Plaintiff,      **MEMORANDUM OF DECISION AND ORDER**

            -against-                                         21-CV-2490 (ST)

COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.
-----------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

      In this appeal brought pursuant to the Social Security Act, 42 U.S.C. § 405 *et seq* (the "Act"), plaintiff Douglas Dovale (the "Plaintiff"), challenges the final determination of the Commissioner of the Social Security Administration (the "Defendant") that Plaintiff was ineligible to receive Social Security disability benefits. The parties filed cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("FRCP") Rule 12(c). For the reasons discussed herein, the Court GRANTS, in part, and DENIES, in part, Plaintiff's motion and DENIES Defendant's motion in its entirety.

**BACKGROUND**

**I.    This Court's Individual Practice with Regards to Social Security Cases.**

      As this Court has previously explained, Social Security disability appeals "can seem, at times, opaque and intractable." *Madigan v. Commissioner of Social Security*, 525 F.Supp.3d 413, 414 (E.D.N.Y. 2021). These cases most often come with an administrative record "consisting of years of medical documents (including lab results, diagnostic tests, and reams of hand-scrawled treatment records, expert medical reports, countless arcane government forms, the transcript of a generally brief, formulaic hearing, and the decision of the ALJ and agency appeals. . .." *Id*. In the

case at hand, the administrative record alone totals close to 700 pages. *See* ECF No. 22-7 (Administrative Record). The parties briefing adds an additional 80 pages to that total. *See, e.g.,* ECF Nos. 22-1-8 (Parties Bundled Filing).

In an effort to maximize the efficiency of this appeals process, this Court ordered the parties (the "Order") to organize their filings based on Individual Rules adopted by the Honorable Gary Brown, United States District Judge for the Eastern District of New York. *See* ECF No. 20 (outlining standards for party submissions). The Order required the parties to submit both a joint stipulation of facts for the Court to understand what facts are not at issue in this matter as well as a "Statement of Contentions" and "Opposing Statement of Contentions." *See id*; *see also Madigan*, 525 F.Supp.3d at 415 (detailing the same required procedures).

> This statement, conceptually similar to that required for summary judgment motions by Local Rule 56.1, shall set forth a separate, short, and concise statement, in numbered paragraphs, the contentions of the plaintiff as to the alleged legal errors in the [Commissioner]'s determination and/or the specific findings of the decisions of the Administrative Law Judge ("ALJ") that, plaintiff contends, is not supported by substantial evidence. *Madigan*, 525 F.Supp.3d at 415.

The Opposing Statement is intended to allow the opposing party to respond to the appealing party's contentions. *See id.* While adding additional pages to an already voluminous record may sound counterproductive, the Court requires this additional step in order guide the Court's review of a massive and complex administrative record towards the critical aspects that comprise the parties' contentions.

## II. Plaintiff's Medical History.

Plaintiff claims the onset date of his disability is December 14, 2017. ECF No. 22-8 at ¶ A1 (Parties' Joint Stipulation of Fact). On this date, Plaintiff was 45 years old. *Id* at ¶ B1. Plaintiff

has a limited education and has previously worked for varying lengths of time as a dishwasher, driver, mechanic, stocker, and laborer. *Id* at ¶ B2.

The Court presumes familiarity with Plaintiff's medical history and so limits its restatement here to the portions of the record essential to fully analyze the ALJ's determination.[1] Plaintiff has, for a number of years, sought treatment for his mental health disorders from a variety of treatment centers and professionals, leading to a large volume of medical examinations and recommendations from various professionals. The ALJ's Decision examines the records of three mental health professionals, Mr. Paul Terri, LMSW, Dr. Paul Herman, and Dr. Anthony Verga. The Court will summarize their findings in turn.

   a. *Mr. Paul Terri*

Plaintiff began treatment with New Horizon Counseling in November of 2017. During intake it was noted Plaintiff was self-referred for behavior issues, depression, anxiety, substance use, and social problems. Id at ¶ C3. While undergoing treatment at New Horizon, social worker Paul Terri ("Mr. Terri") diagnosed Plaintiff with bipolar and panic disorder marked by rapid mood swings, irritable moods, and fluctuations between hypomanic and depressive states with antisocial and angry outbursts. Id at ¶ C5. Mr. Terri indicated these limitations might "drastically limit [Plaintiff's ability] to work." Id (alteration in original).

On January 2, 2018, Mr. Terri completed a questionnaire regarding Plaintiff's mental functioning. He indicated the following: 1.) mild to moderate limitations in understanding, remembering, or applying information, 2.) mild to extreme limitations in maintaining concentration, persistence, or pace, 3.) mild limitation in the ability to work at an appropriate and

---

[1] Plaintiff's challenge is limited to the ALJ's determination of his mental impairments. ECF 22-8 at C n. 1. As such, this restatement of Plaintiff's medical history omits Plaintiff's physical impairments and medical treatments for physical conditions.

consistent pace or complete tasks in a timely manner, 4.) moderate limitations in the ability to initiate and perform a task he knew how to do, 5.) marked limitations in the ability to ignore or avoid distractions while working as well as the ability to work a full day without needing more than the allotted number or length of rest periods, and 6.) extreme limitations in the ability to work close to or with others without interrupting or distracting them as well as in the ability to sustain an ordinary routine and regular attendance at work. *Id* at ¶ C7. Notably, Mr. Teri delineated between areas in which Plaintiff did and did not experience difficulties, noting that Plaintiff had no limitations maintaining personal hygiene but did have extreme limitations adapting to changes and managing psychologically based symptoms. *Id*. Mr. Terri did not complete the sections asking for medical/clinical findings to support his assessment. *Id*.

    b. *Dr. Paul Herman*

At the request of the SSA, Plaintiff submitted to an examination with Paul Herman, MD ("Dr. Herman") for a consultative evaluation on March 5, 2018. Plaintiff reported his prior hospitalizations, suicide attempts, history of arrests and substance abuse, anger issues, low frustration tolerance, and antisocial behavior. *Id* at C11. Dr. Herman diagnosed Plaintiff with antisocial personality disorder and depression as well as cocaine use disorder in sustained remission as well as opiate use disorder in sustained partial remission. *Id*. Dr. Herman noted there did not appear to be limitations with Plaintiff's ability to understand, remember, and apply simple directions, could apply reason and judgment, sustain concentration, maintain hygiene, and be aware of hazards and take appropriate precautions. *Id*. While Dr. Herman recommended one year of treatment, he concluded that Plaintiff did "not appear to be impaired to the extent that all vocational functioning be precluded . . .." *Id.*

### c. Dr. Anthony Verga

Plaintiff was transferred to the care of psychiatrist Anthony Verga ("Dr. Verga") on February 5, 2019. Dr. Verga's records indicated that while under his care, Plaintiff predominantly reported positive effects from his medication, but routinely required modifications to adjust for persistent anxiety, tiredness, or for personal obligations that may require a change in dosage. See id at ¶¶ C24-34. Plaintiff was able to have positive interactions with his daughter and attend a family vacation during this time, although he reported to Dr. Verga that he continued to experience severe difficulty with anger management despite counseling and medication. Id at ¶¶ C25, C30, C35.

On August 30, 2019, Dr. Verga completed an opinion form regarding Plaintiff's mental functioning. This assessment was in part based on a review of Plaintiff's psychiatry records dating back to 2015. ECF No. 22-7 at 21. Dr. Verga determined that Plaintiff suffered from the following: 1.) extreme limitation in understanding and memory due to his depression and anxiety and severe impulse control problems; 2.) marked limitation in carrying out short and simple instructions and sustaining a routing; 3.) extreme limitations in carrying out detailed instructions, maintaining attention and concentration for extended periods, and performing activating and maintaining attendance within normal tolerances; 4.) marked to extreme limitation in Plaintiff's ability to complete a normal workweek; 5.) extreme limitations in Plaintiff's ability to make work related decisions and perform at a consistent pace; 6.) extreme limitations in Plaintiff's ability to interact appropriately with the general public and to accept criticism from supervisors. ECF No. 22-8 at ¶ C32. Dr. Verga also noted less severe, but moderate limitations with maintaining socially appropriate behavior, cleanliness, and neatness. *Id.*

### III. Administrative History.

Plaintiff filed an application for Social Security disability benefits due to bipolar disorder, depression, back and neck problems, and panic disorder on December 14, 2017. ECF No. 22-8 at ¶ A1 (Parties' Joint Stipulation of Fact). Although Plaintiff's application initially dated back to January 1, 1990, he subsequently amended the onset date of his disability status to December 14, 2017. *Id*. Plaintiff's initial application was denied, and a hearing was subsequently held before an Administrative Law Judge (the "ALJ") on October 29, 2019. *Id* at ¶ A2.

The ALJ, Judge Alan Berkowitz, issued his decision on March 4, 2020, finding that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. *Id* at ¶ A3. While the ALJ determined that Plaintiff suffered severe impairment from bipolar disorder, depressive disorder, panic disorder, intermittent explosive disorder, anti-social personality disorder, and herniated discs and degenerative disc disease, he found that no impairment alone or in combination met or medically equaled a qualifying impairment listed in 20 C.F.R. Part 404. *Id*. The ALJ reached this conclusion after finding the medical conclusions of Dr. Verga and Mr. Terri unpersuasive based on the ALJ's own review of the treating professional's notes. ECF No. 22-7 at 22. The ALJ did find Dr. Herman's examination persuasive, and ultimately agreed with his findings. *Id.* The ALJ further found that Plaintiff retained residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> The claimant can occasionally stoop, crouch, crawl, kneel or squat; can occasionally climb ladders and ramps; and no climbing of scaffolds. In addition, the claimant can understand, remember, and carry out one and two step tasks; can occasionally interact with the general public, coworkers, and supervisors; can perform low stress work defined as having occasional decision making and occasional changes in the work setting; and is able to concentrate for two hours at once and then needs a 10-minute off task break. ECF No. 22-8 at ¶ A3

Given the level of sustained work managed by Plaintiff in the previous 15 years, the ALJ determined that Plaintiff had no past relevant work experience, but listed possible occupations

suited for Plaintiff's condition, education level, and work experience as Table Worker, Final Assembler, and Bench Hand. *Id*; *see also* ECF No. 22-7 at 25. Plaintiff sought review from the Appeals Council, which was denied, making the ALJ's decision the final decision of the Commissioner. ECF No. 22-8 at ¶ A4.

Plaintiff filed this action on May 5, 2021. ECF No. 1. Upon the consent of both parties to the Jurisdiction of a United States Magistrate Judge, I assumed the role of presiding Judge on May 31, 2023. *See* ECF Nos. 18-19. The parties filed their cross motions for judgment on the pleadings on October 3, 2023.

## LEGAL STANDARD

### I. Social Security Disability Standard.

Under the Act, in order to qualify for Social Security disability insurance benefits one must:

1. be insured for disability insurance benefits;
2. be beneath the age of retirement;
3. be either a United States Citizen or a foreign national meeting conditions not relevant to this instant case; and
4. be disabled as defined by the Social Security Administration (the "SSA"). 42 U.S.C. § 423(a)(1).

The SSA defines disability to mean an individual who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *see also Zacharopoulos v. Saul*, 516 F.Supp.3d 211, 219 (E.D.N.Y. 2021). Furthermore, this impairment must be "of such severity that

[the claimant] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see also Shaw v. Chater*, 221 F.3d 126, 131-32 (2d Cir. 2000).

To guide ALJs in making this determination, the SSA has promulgated a five-step inquiry as outlined below:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the Commissioner next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him [or her] disabled without considering vocational factors such as age, education and work experience .... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his [or her] past work, the Commissioner then determines whether there is other work which the claimant can perform. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted); *see also Zacharopoulos*, 516 F.Supp.3d at 219.

The claimant bears the burden of proof at steps one through four, which then shifts to the Commissioner at step five to show the claimant is capable of working. *Zacharopoulos*, 516 F.Supp.3d at 219.

## II. Standard of Review.

"A motion for judgment on the pleadings should be granted if it is clear from the pleadings 'that the moving party is entitled to judgment as a matter of law.'" *Id* (quoting *Burns Int'l Sec. Servs., Inc. v. Int'l Union*, 47 F.3d 14, 16 (2d Cir. 1995). The Court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing a decision of the

Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g).

As a general matter, the Court's review of a Commissioner's decision to deny disability insurance benefits is a limited one. District courts are cautioned not to substitute their own judgment for that of a Commissioner, nor is the reviewing district court entitled to "determine *de novo* whether [the claimant] is disabled." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). Instead, a reviewing court is limited to "two inquiries: (1) whether the Commissioner applied the correct legal standards in reaching a decision, and (2) whether the Commissioner's factual findings were 'supported by substantial evidence in the record as a whole.'" *Zacharopoulos*, 516 F.Supp.3d at 219 (quoting *Greek v. Colvin*, 802 F.3d 370, 374-75 (2d Cir. 2015).

In reviewing for legal error, the district court must "be satisfied that the claimant has had a full hearing under the ... regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990) (alterations in original). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted).

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir.2008) (internal quotation marks omitted). "That is to say, the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive, 42 U.S.C. § 405(g), and therefore, the relevant question is not whether substantial evidence supports plaintiff's position, but whether 'substantial evidence supports *the ALJ's decision.*'" *Zacharopoulos*, 516

F.Supp.3d at 220 (quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original)). In making this determination, the reviewing court is required to examine the record as a whole, including "contradictory evidence and evidence from which conflicting inferences can be drawn." *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999).

## DISCUSSION

In reaching his conclusion that Plaintiff was ultimately not disabled, the ALJ found unpersuasive two medical opinions of Plaintiff's treating mental health professionals, Dr. Verga and Mr. Terri. ECF No. 22-7 at 22. The ALJ did so in favor of the opinion of Dr. Herman, a consulting physician who examined Plaintiff in a single session at the behest of the SSA. *Id*; *see also* ECF No. 22-8 at ¶ C11. Upon review, the ALJ's determination is not supported by substantial evidence because he impermissibly relied on a consulting physician's examination over two contradictory treating professionals without providing a meaningful explanation as to why the consulting physician's opinion was persuasive.[2]

Under the previously governing "treating physician rule," the SSA was bound to "give controlling weight to a treating source's opinion so long as it was well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record." *Sutton v. Commissioner of Social Security*, No. 20-CV-3441 (PKC), 2022 WL 970748, at * 3 (E.D.N.Y. Mar. 31, 2022) (internal quotations and citations

---

[2] Plaintiff also asks this Court to determine that Plaintiff is in fact disabled and remand for the more limited purpose of calculating Plaintiff's benefits. While Plaintiff may well be successful on remand, "[s]uch a remedy is only appropriate when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Patel v. Colvin*, No. 10-CV-04617 ENV, 2013 WL 3873234, at *10 (E.D.N.Y. July 25, 2013) (quoting *Pratts v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)). The Court is not convinced at this stage that further evidentiary proceedings would serve no purpose as the ALJ has yet to fully detail his rationale for finding Dr. Herman's consulting examination to be persuasive. Because, at this stage, the nature of this Court's review is limited, Plaintiff's request to remand for calculation of benefits is denied.

omitted). However, under new regulations, the SSA no longer affords controlling weight to a treating physician and instead considers the persuasiveness of all medical opinions using five factors: 1.) supportability; 2.) consistency; 3.) relationship of the source with the claimant; 4.) the medical source's specialization; and 5.) other factors, such as evidence showing the provider has "familiarity with the other evidence in the claim or an understanding of [the SSA] disability program's policies and evidentiary requirements. *Id* at \*4 (internal quotations and citations omitted).

Notwithstanding this shift in regulation, this Circuit has consistently cautioned the SSA against over-relying on the medical opinions of consulting physicians. This is especially true in mental health cases where "a one-time snapshot of a claimant's status may not be indicative of [his] longitudinal mental health." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) ("We have frequently cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination. . .. This concern is even more pronounced in the context of mental illness . . .."); *see also Sutton*, 2022 WL 970748, at \*6 (stating same). Meanwhile, while not controlling, treating source opinions remain "foundational" and "consistency with those observations is a factor in determining the value of any [treating source's] opinion." *Acheampong v. Commissioner of Social Security*, 564 F.Supp.3d 261, 267 (E.D.N.Y. 2021)

While the law allows for an ALJ to reject the conclusions of a treating physician, the conclusion must be supported by substantial evidence in the record. In the instant case, the ALJ's determination cannot meet this standard. In rejecting the opinion of Mr. Terri, Plaintiff's treating social worker at New Horizon Counseling, the ALJ concluded that Mr. Terri's treatment notes could not support his ultimate conclusion that Plaintiff had moderate to extreme limitations in multiple categories. ECF No. 22-7 at 21. In particular, the ALJ noted that Mr. Terri's notes

indicated that Plaintiff appeared "well groomed, cooperative and fully oriented." *Id*. Yet, this notation does not appear to be inconsistent with Mr. Terri's ultimate diagnosis. Mr. Terri delineated between Plaintiff's anti-social and explosive personality issues from his relatively normal ability to take care of himself, indicating that Plaintiff has no limitations maintaining personal hygiene. ECF No. 22-8 at ¶ C7. Conversely, Mr. Terri noted Plaintiff had extreme difficulty in working in close proximity to others and adapting to change at work. *Id*. This is well supported by his treatment notes which indicate "[Plaintiff] presents as antisocial with borderline traits, with mood lability manifest as intermittently explosive." ECF No. 22-7 at 626.

The ALJ reached a similar conclusion regarding the opinion of Dr. Verga, finding his assessment that Plaintiff had extreme limitations in all four categories of mental functioning unpersuasive based on Dr. Verga's own treatment notes. ECF No. 22-7 at 21. The ALJ noted that Dr. Verga's notes indicate Plaintiff presented with "stable mood . . . was compliant with treatment . . . the claimant was planning to go away on vacation in July 2019. . .. In fact, these reports stand in stark contrast to Dr. Verga's single notation in November 2019 that treatment has not prevented the claimant's explosivity." *Id*.[3] Again, the ALJ appeared to be picking and choosing from Dr. Verga's notes in order to reach this conclusion. Plaintiff was transferred to the care of Dr. Verga after his mental health took a downturn with his previous doctor. Plaintiff reported an increase in "irritable mood, angry outbursts, [and] fighting with his wife." *See id* at 670 (final treatment note of Dr. Syed Jaffery before recommending transfer to Dr. Verga). In his first session with Dr. Verga, Plaintiff reported 'persistent anxiety" that required frequent adjustments to Plaintiff's medication

---

[3] The ALJ also criticized Dr. Verga for indicating that Plaintiff did not suffer from a substance abuse disorder despite having a history of cocaine and opiate use. ECF No. 22-7 at 21. Ultimately, this fact is immaterial to the Court's analysis as the ALJ notes in his opinion that because Plaintiff has been free of any drug for the entire period covered by this claim, "substance use was not a material factor in the claimant's psychiatric impairments." *Id* at 17.

to bring under control. *See id* at 672, 674 (noting Plaintiff had no anxiety relief from Buspar and was switched to Diazepam).

While overall the period in which Dr. Verga managed Plaintiff's treatment seemed to be relatively stable, Dr. Verga's recommendation was also based off a review of Plaintiff's extensive medical records dating back to 2015. *Id* at 21. Much of these records are comprised of the treatment notes of Plaintiff's previous doctor, Dr. Syed Jaffery, who the ALJ dismissed as being unpersuasive as his treatment notes frequently noted that Plaintiff appeared "cooperative and well groomed." *Id* at 21. Yet, equally present throughout Dr. Jaffery's extensive records, yet mentioned nowhere in the ALJ's review are notes consistent with the recommendations of the treating physicians in this case. The Court merely summarizes a few examples here:

1. On December 21, 2017, Plaintiff reported his anxiety was "off the roof and affecting his day-to-day functioning." *Id* at 646.

2. On February 2, 2018, Plaintiff reported he "is still getting angry/irritable/mood swings despite taking Ability . . . He said Lexapro is not helping with anxiety." *Id* at 650.

3. On June 26, 2018, Plaintiff indicated he is "still struggling with residual symptoms of depression." *Id* at 658.

4. On February 5, 2019, before being transferred to Dr. Verga, Plaintiff reported he was having "more irritable mood, angry outburst[s], fighting with his wife." *Id* at 670.

In essence, the highs and lows of Plaintiff's treatment history are a cautionary tale of why this Court has warned against over reliance on consulting opinions in SSA determinations. While mentioned previously, it bears repeating, "a one-time snapshot of a claimant's status may not be indicative of [his] longitudinal mental health," given how much an individual's symptoms may present or alleviate over the course of an extensive treatment plan. *See Estrella*, 925 F.3d at 98.

While the ALJ dismissed the recommendations of two treating professionals by cherry-picking from the underlying record, the ALJ gave no meaningful explanation at all as to why he found the opinion of Dr. Herman persuasive. Instead, he merely stated that he found the "assessment . . . persuasive since it is based on a thorough examination and is supported by the documented findings." ECF No. 22-7 at 22. This Circuit has previously remanded cases in which an ALJ discredited the views of treating physicians based on a consulting physician examination. *See e.g.*, *Rucker v. Kijakazi*, 48 F.4th 86, 94 (2d Cir. 2022) (remanding where "ALJ made no effort to reconcile the contradictions between [the consulting physician's] report and [treating physician's] report" (internal quotations omitted)); *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) (remanding where ALJ credited consultative examiner over treating physician when only one consultative exam was performed).

Admittedly, as the SSA has only recently shifted away from the treating physician rule to the five-factor persuasiveness test, much of this Circuit's case law remains tied to a now foregone rule. However, nothing about this change in the governing regulation changes the underlying concern in cautioning against overreliance on consulting physician examinations. Indeed, it is for this reason that when applying the now governing five-factor test that "the ALJ must 'explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings'" *Acheampong*, 564 F.Supp.3d at 267. Requiring an ALJ to state the reasons for his determinations assures a reviewing court that if a consulting physician has been relied on over a treating physician, it was not done without substantial evidence. Here, the ALJ merely summarily concluded that Dr. Herman's opinion was persuasive and offered no examination of the supportability or consistency factors to support his conclusion. That is reversible error. *See id*.

## CONCLUSION

For the reasons set forth herein, the Court DENIES Defendant's motion for judgment on the pleadings. The Court GRANTS, in part, and DENIES, in part, Plaintiff's motion for the same and the decision is remanded pursuant to 42 U.S.C. § 405(g) for further consideration consistent with this Memorandum and Order.

**SO ORDERED.**

                                              /s/ STEVEN TISCIONE
                                              Steven L. Tiscione
                                              United States Magistrate Judge
                                              Eastern District of New York

Dated: Central Islip, New York
           October 30, 2023